[No. B159209. Second Dist., Div. Eight. Feb. 11, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
HECTOR CORTEZ GUTIERREZ, Defendant and Appellant.

## COUNSEL

Rene A. Ramos, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Deborah J. Chuang and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RUBIN, J.**—Defendant Hector Cortez Gutierrez (appellant) appeals from the denial of his motion to set aside his guilty plea to a charge of attempted carjacking. He contends that the trial judge did not adequately explain to him the immigration consequences of his plea as required by Penal Code section 1016.5, and, therefore, the plea must be set aside under that statute.[1] We conclude that the trial court complied with the legislative mandate when the plea was entered and properly denied appellant's subsequent motion to vacate. Accordingly, we affirm.

### PROCEDURAL HISTORY

As the case comes to us following a plea, the underlying facts are of little moment. Suffice it to say that appellant and a confederate were charged with two counts of attempted carjacking in violation of sections 664 and 215, subdivision (a). On March 24, 2000, both defendants entered pleas of guilty to one count and were sentenced to 18 months in state prison. The maximum sentence for attempted carjacking is four years six months. The remaining count was dismissed.

In conjunction with entering his plea, appellant was advised of his constitutional rights and the nature and consequences of his plea both orally and by way of a written waiver form. In the course of the oral proceedings, the deputy district attorney asked appellant the following question: "If you are not a United States citizen, you will be deported from the United States, denied re-entry and denied amnesty or naturalization. [¶] Mr. Gutierrez, do you understand that?" Appellant answered, "Yes."[2]

The written waiver form included a box number "10" which the appellant stated he had initialed. That portion of the form stated: "I understand that if

---

[1]All further statutory references are to the Penal Code.

[2]In the course of giving the advisements, the prosecutor asked essentially the same questions to the codefendant who was present in court at the time.

I am not a citizen of the United States, the conviction for the offense charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

Appellant told the court that he was pleading to count one because it was in his best interests to do so and that he understood the written waiver form and had initialed and signed it. The trial judge found that appellant "expressly, and knowingly, and intelligently waived all of his constitutional rights" and that his plea was entered "freely and voluntarily . . . with an understanding of the nature and consequences, and that there is a factual basis for the plea."

Nearly two years later, after he had served his sentence, been deported to Mexico, and denied reentry to the United States, appellant moved to vacate his plea. He stated in a declaration filed with the court and signed in Mexico that he "was not advised my conviction in this case would result in my exclusion from admission. My attorney told me that I would not be deported if I accepted the prosecution's plea offer. For that reason, I agreed to waive all rights in the above-entitled matter. [¶] Had I known that exile from my family and home would be the direct consequence of my plea, I would have exercised my right to a jury trial." He further stated that he had lived in the United States since 1971 and has a four-year-old daughter who is an American citizen.

In the points and authorities filed with the trial court, appellant made the same arguments he asserts here: the verbal admonition of the immigration consequences of appellant's plea was legally defective, and it was not cured by the written waiver form which on its face showed irregularities. After hearing oral argument, the trial court denied the motion. This appeal followed.

## DISCUSSION

█ A motion to vacate the judgment is the equivalent of a petition for a writ of error *coram nobis*. (*People v. Gontiz* (1997) 58 Cal.App.4th 1309, 1312 [68 Cal.Rptr.2d 786] (*Gontiz*).) As such, it is an appealable order. (*People v. Dubon* (2001) 90 Cal.App.4th 944, 950 [108 Cal.Rptr.2d 914].) █ We review a motion to vacate under section 1016.5 for abuse of discretion. (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 192 [96 Cal.Rptr.2d 463, 999 P.2d 686] (*Zamudio*).)

Section 1016.5, subdivision (a) provides: "Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state

law, except offenses designated as infractions under state law, the court shall administer the following advisement on the record to the defendant: [¶] If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." Subdivision (b) directs the court to vacate any plea taken without the advisement when the defendant shows that the plea may have the adverse consequences described by the statute.

 Appellant contends that the oral advisement of the immigration consequences of his plea was defective because it did not mirror the wording of section 1016.5. Appellant's factual observation is correct; his legal point is not.

In taking the plea, instead of using the statutory language "exclusion from admission to the United States," the prosecutor used the phrase "denied re-entry." Appellant seizes on this misstatement and argues that under *Gontiz*, the plea must be vacated. In *Gontiz*, the Court of Appeal reversed two convictions because the trial court had failed to advise the defendant that he could be "excluded" from the United States; the only admonishments pertained to deportation and naturalization. In its opinion, the appellate court included the following passage that appellant contends helps his position here: "There is case law which holds that the exact wording of the advisement is not critical so long as the defendant is warned ·there may be some immigration consequences flowing from his guilty plea. [Citations.] These cases are wrong. The statute requires the court to warn the defendant expressly of each of the three distinct possible immigration consequences of his conviction(s) prior to his plea." (*Gontiz, supra,* 58 Cal.App.4th at p. 1316.)[3]

Appellant reads too much into *Gontiz*'s criticism of other cases. At most, *Gontiz* stands for the proposition that a generalized statement that a guilty plea may have "immigration consequences" is insufficient to comply with section 1016.5. Indeed, that is the precise holding in the last sentence which we have quoted above: "The statute requires the court to warn the defendant expressly of each of the three distinct possible immigration consequences of his conviction(s) prior to his plea." (*Gontiz, supra,* 58 Cal.App.4th at p. 1316.) Appellant's effort to convert *Gontiz*'s reminder that trial courts must be faithful to the statute into a rule that any variance from the literal language of the legislation requires a plea to be vacated is unsupported for two reasons. First, the Supreme Court in *Zamudio* has implicitly recognized

[3]In *Zamudio,* our Supreme Court disapproved *Gontiz* on the showing of prejudice required in motions under section 1016.5. (*Zamudio, supra,* 23 Cal.4th at p. 200, fn. 8.)

that substantial, not literal, compliance with section 1016.5 is sufficient. In discussing whether the failure to give an admonishment on subsequent exclusion from the United States would be reversible error if the defendant faced no threat of exclusion, the court stated: "Nevertheless, if defendant's circumstances at the time of his 1992 plea did not, in fact, allow for the possibility of his subsequent exclusion from the United States in the event he were deported, the advisement he received concerning deportation and naturalization would have been in *substantial compliance* with the requirements of section 1016.5, in that they would have informed defendant of the only consequences pertinent to his situation. . . ." (*Zamudio, supra,* 23 Cal.4th at p. 208, italics added.)

Second, both *Zamudio* and *Gontiz* make clear that the words used by the prosecutor here were the equivalent of the statutory language. " 'Exclusion' is 'being barred from entry to the United States.' [Citation.]" (*Zamudio, supra,* 23 Cal.4th at p. 207.) "Deportation is to be distinguished from exclusion, which is the denial of entry to the United States. [Citation.]" (*Gontiz, supra,* 58 Cal.App.4th at p. 1317.) We hold here that only substantial compliance is required under section 1016.5 as long as the defendant is specifically advised of all three separate immigration consequences of his plea. Appellant was expressly told that one of the immigration consequences of his conviction was that he would be denied reentry into the United States; in other words, under the statute, he would be excluded from the United States. ██ ██ ██ ██ ██ The trial court, thus, substantially complied with the statute, and, hence, committed no error in the manner in which it took appellant's plea.[4]

 Even if we were to consider the variance in language used by the prosecutor as reversible error in a vacuum, there was no such void, as any

---

[4]Under *Zamudio*, a defendant who seeks to set aside his plea must show prejudice, namely, that but for the failure to advise, he would not have entered a guilty plea. This is a factual question for the trial court. (*Zamudio, supra,* 23 Cal.4th at pp. 199-200, 209-210.) A review of the trial court's statements at the hearing on the motion to vacate reveals the court at least impliedly disbelieved appellant when appellant declared that if he had been advised orally using the statutory language he would have not pled guilty. As we have observed, the phrase "denied re-entry" is the legal equivalent of "exclusion of admission"; moreover, linguistically "denied re-entry" is a more precise statement of the consequence. Accordingly, appellant was not entitled to have his plea set aside because he failed to show prejudice.

Appellant also contends there are actually three components to exclusion: reentry, rescission of resident status, and ineligibility to adjust one's status, and further that the trial court erred when it admonished appellant only as to reentry. He cites no authority for the proposition that there are three components under federal immigration law, or that there is any obligation to advise on such additional matters; thus, we may treat the issue as waived. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481].) In any event, a trial court does not have an obligation to advise on those immigration consequences that appellant may suffer other than the ones listed in section 1016.5. (*People v. Barocio* (1989) 216 Cal.App.3d 99, 105 [264 Cal.Rptr. 573] [no obligation to advise on right to request a "recommendation against deportation" under 8 U.S.C. former § 1251(b)(2)].)

error was concurrently cured by the written waiver of rights form utilized by the trial judge in accepting the plea. That waiver recites the verbatim language of section 1016.5 and, as we have observed, defendant initialed the box next to the advisement and told the trial judge that he had signed, read and understood the form. A court "may rely upon a defendant's validly executed waiver form as a proper substitute for a personal admonishment." (*People v. Panizzon* (1996) 13 Cal.4th 68, 83 [51 Cal.Rptr.2d 851, 913 P.2d 1061].) Appellant argues that he "hastily signed" the form, impliedly "did not read the form or understand it," and that he simply followed instructions of his attorney and the deputy district attorney. Appellant's difficulty is that these assertions are not supported by the record. The declaration signed by appellant in support of his motion to vacate the plea does not corroborate the naked claims made in the opening brief. As relevant here, he stated only that he was not advised of exclusion from admission, his attorney told him he would not be deported, he has suffered understandably adverse consequences from his exclusion, and he would not have entered the plea if he had been properly advised. He does not contradict his statement to the court that he read, signed, initialed and understood the form.

Appellant correctly points out that there was some hesitation at the time the plea was taken when the prosecutor asked appellant if he had discussed the case with his attorney. After acknowledging that he had reviewed everything on the waiver form, appellant said he had not discussed "all of [the form] yet" with his lawyer. There was a brief conference between appellant and his counsel, appellant stated on the record that he had one question, he conversed further with his attorney, the court reflected the conference on the record, and then appellant was asked if he had any questions. Appellant responded in the negative. He asked no questions when a few minutes later the prosecutor gave him the section 1016.5 admonishment. There is nothing in the record that suggests the question appellant had for his attorney during the taking of the plea had anything do with immigration.

To the extent appellant is now contending that his attorney actually gave him advice that was contrary to what he was thereafter told orally and in writing in open court, that argument is equally unavailing. First, the only reference in the record to what his attorney advised him is the following statement contained in his declaration filed in support of his motion to vacate: "My attorney told me that I would not be deported if I accepted the prosecution's plea offer." This statement directly contradicts the oral and written waivers made in the trial court, including his statement that no promises were made to him that were not on the record. Of additional significance is that this statement does not address the reentry/exclusion

issue that is the basis of appellant's present appeal. It deals with deportation as to which there was no inconsistency between either the oral or written waivers and the statute. More fundamentally, at most this argument is a disguised claim that appellant received ineffective assistance of counsel, an argument which is not formally asserted in appellant's brief and is not cognizable on *coram nobis*. (See *People v. Soriano* (1987) 194 Cal.App.3d 1470, 1477 [240 Cal.Rptr. 328, 65 A.L.R.4th 705] [ineffective assistance of counsel may be raised only by direct appeal or habeas corpus petition].)[5]

Finally, to the extent appellant states in his written declaration that his understanding was different than what he said in court, the trial court impliedly disbelieved him when it denied the motion to set aside the plea. We are not free to disregard this implied finding that is supported by substantial evidence. (See *Zamudio, supra,* 23 Cal.4th at p. 210 [factual issues presented on a motion to vacate plea are to be resolved by trial court].) For the same reasons, we reject appellant's argument, also without evidentiary support, that the fact appellant checked off boxes dealing with subjects for defense counsel and the prosecutor, respectively, demonstrates that appellant did not understand the immigration consequences of his plea.

## DISPOSITION

The trial court's denial of appellant's motion to vacate is affirmed.

Cooper, P. J., and Boland, J., concurred.

---

[5]Appellant also states in his declaration: "I was not advised that my conviction in this case would result in my exclusion from admission." We observe that unlike the next sentence in his declaration in which he says his attorney *expressly* told him he would *not* be deported, the quoted statement does not say his attorney affirmatively told him he would *not* be excluded. His passive tense statement that he "was not advised" of exclusion is refuted by both the written and oral record of the proceedings.