Filed 11/9/15  P. v. Olivares CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GENARO OLIVARES,<br><br>Defendant and Appellant. | F069084<br><br>(Super. Ct. No. VCF031194-91)<br><br>**OPINION** |

THE COURT*

APPEAL from a judgment of the Superior Court of Tulare County.  Darryl B. Ferguson, Judge.

Eric P. Escamilla for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Kari Ricci Mueller, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Genaro Olivares appeals from a 2014 order denying his Penal Code section 1016.5[1] motion to vacate his September 18, 1991, convictions in Tulare County

---

\*       Before Levy, Acting P.J., Kane, J. and Smith, J.

Superior Court for sodomy by force or fear (count 2/§ 286, subd. (c)) and lewd conduct upon a child (count 3/§ 288, subd. (a)).  Olivares contends the court's order denying his motion to vacate must be reversed because at the change of plea proceeding when he pled no contest to the above charges the trial court did not properly advise him of his *Boykin/Tahl*[2] rights and of the immigration consequences of his plea.  Alternatively, he contends he was denied the effective assistance of counsel in presenting his motion to the court.  We affirm the trial court's order denying Olivares's motion to vacate judgment.

## FACTS

On July 26, 1991, Olivares and another man took a 14-year-old boy to a restroom at a park in Tulare County and sexually assaulted him.

On September 18, 1991, Olivares pled no contest to the two counts noted above in exchange for the dismissal of one count each of kidnapping (count 1/§ 207, subd. (a)) and oral copulation in concert with force (count 4/§ 288a, subd. (d)), and a lid of six years.  During the change of plea proceedings, after Olivares pled no contest to the two charges noted above, the following colloquy occurred:

> "THE COURT:  And do you understand if you are not a citizen of the United States this [plea] can be used against you to deny naturalization or cause deportation or exclusion.  Do you understand that?
>
> "DEFENDANT OLIVARE[S]:  I understand."

A short time later, the court advised Olivares of his constitutional rights as follows:

> "THE COURT:  And do you understand you have a right to trial by court or jury?

---

**1**    All further statutory references are to the Penal Code.

**2**    *Boykin v. Alabama* (1969) 395 U.S. 238; *In re Tahl* (1969) 1 Cal.3d 122 (*Boykin/Tahl*).

2.

"[THE COURT]:  To subpoena and cross examine all witnesses and the right to not testify against yourself, do you understand that?

"DEFENDANT OLIVARE[S]:  I waive that right.

"THE COURT:  Do you understand and do you waive your right to trial by court or jury?

"DEFENDANT OLIVARE[S]:  I waive.

"THE COURT:  And you waive your right to subpoena and cross-examine all witnesses?

"DEFENDANT OLIVARE[S]:  I waive.

"THE COURT:  And you waive your right against self-incrimination, when you plead guilty or no contest you testify against yourself.

"DEFENDANT OLIVARE[S]:  I understand.

"THE COURT:  Do you have anything else you wish me to ask him [Prosecutor]?

"[PROSECUTOR]:  No, your Honor.

"THE COURT:  [Defense Counsel]?

"[DEFENSE COUNSEL]:  No, your Honor.

"THE COURT:  *Court will accept the plea*.  Find it is knowingly, intelligently, voluntarily entered."  (Italics added.)

On November 6, 1991, the court sentenced Olivares to an aggregate five-year term, the aggravated term of three years on count 3 and a consecutive two-year term on count 2, one-third the middle term of six years.

On December 10, 2013, Attorney J.M. Irigoyen filed a motion pursuant to section 1016.5 to vacate Olivares's 1991 guilty plea.  In a supporting declaration executed on August 5, 2013, Olivares averred that he was never advised during the 1991 change of plea proceeding that he would be inadmissible to the United States if he accepted the plea.  According to Olivares, he was advised only that he would be deported

3.

or excluded, which meant the same thing to him.  Olivares also asserted that he was facing removal proceedings and that his wife, who was an alien permanent resident, could not file an immigration petition on his behalf because the above convictions made him inadmissible to the United States.  Thus, according to Olivares, if it had been explained to him that his convictions rendered him inadmissible to the United States, he would not have entered his plea in this matter.

On January 23, 2014, the court denied the motion.

## DISCUSSION

Olivares contends the trial court erred when it took his plea in 1991 because it did not advise him of his *Boykin/Tahl*[3] rights or the immigration consequences of his plea until after he had entered his plea.  He also contends he was not properly advised of the immigration consequences of his plea because instead of advising him that his plea could result in his "exclusion from admission to the United States" (see § 1016.5) the court advised him only that his plea could be used against him to cause his "exclusion."  Olivares also contends that he was prejudiced by the improper advisement of the immigration consequences of his plea because he is now involved in immigration

---

[3]     "In *Boykin v. Alabama*[, *supra*,] 395 U.S. 238, 243 and footnote 5, … the United States Supreme Court explained that a defendant seeking to *plead guilty* is denied due process under the federal Constitution unless the plea is voluntary and knowing.  'Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial.  First, is the privilege against compulsory self-incrimination.... [Citation.]  Second, is the right to trial by jury.  [Citation.]  Third, is the right to confront one's accusers.'  [Citation.]  In *Boykin*, the defendant pled guilty to five counts at a proceeding in which 'the judge asked no questions of petitioner concerning his plea, and petitioner did not address the court.'  [Citation.]  Given that truly 'silent record,' the high court refused to presume a knowing and voluntary waiver of these constitutional rights. [Citation.]  In the wake of *Boykin,* we held in *In re Tahl*[, *supra*,] 1 Cal.3d 122 … that 'each of the three rights mentioned—self-incrimination, confrontation, and jury trial—must be specifically and expressly enumerated for the benefit of and waived by the accused *prior* to acceptance of his *guilty plea.'* [Citation.]" (*People v. Mosby* (2004) 33 Cal.4th 353, 359.)

4.

removal proceedings. Thus, according to Olivares, his 1991 convictions must be vacated pursuant to section 1016.5 and because his no contest plea was not entered into knowingly and intelligently under the totality of the circumstances. We reject these contentions.

Preliminarily, we conclude that Olivares's *Boykin/Tahl* issue is not cognizable on appeal. "Section 1016.5 addresses only the duty of trial courts to advise the defendant of the immigration consequences of the plea, and it empowers the court to vacate a conviction and set aside a plea only for the *court's* failure to fulfill that duty." (*People v. Aguilar* (2014) 227 Cal.App.4th 60, 71 (*Aguilar*).) Thus, section 1016.5 did not grant the court jurisdiction to consider a *Boykin/Tahl* challenge to Olivares's 1991 plea. (Cf. *Aguilar*, *supra*, 227 Cal.App.4th at p. 71 [§ 1016.5 did not grant court jurisdiction to consider ineffectiveness of counsel claim with respect to plea being challenged].) Further, even if the trial court did have such jurisdiction, Olivares forfeited his *Boykin/Tahl* argument on appeal by his failure to make this argument in the trial court. (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1252.)

Nor is there any merit to Olivares's claims with respect to the alleged misadvisement of the immigration consequences of his plea. Section 1016.5, in pertinent part, provides:

> "(a) *Prior to acceptance of a plea of guilty or nolo contendere* to any offense punishable as a crime under state law … the court shall administer the following advisement on the record to the defendant: [¶] If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged *may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States*.

> "(b) ... If … the court fails to advise the defendant as required by this section and the defendant shows that conviction of the offense to which defendant pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States,

5.

the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty. Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement." (Italics added.)

"To prevail on a motion to vacate under section 1016.5, a defendant must establish that (1) he or she was not properly advised of the immigration consequences as provided by the statute; (2) there exists, at the time of the motion, more than a remote possibility that the conviction will have one or more of the specified adverse immigration consequences; and (3) he or she was prejudiced by the nonadvisement. [Citations.]" (*People v. Totari* (2002) 28 Cal.4th 876, 884.)

The plain language of the statute makes it clear that the trial court must provide the advisement of immigration consequences to a defendant *prior to accepting the defendant's plea.* The 1991 change of plea hearing transcript clearly shows that the court administered this admonishment prior to accepting his plea, as required by the statute. Thus, the court's failure to advise Olivares of the immigration consequences of his plea prior to Olivares tendering his plea does not provide a basis for the judgment to be vacated pursuant to section 1016.5.

Olivares challenges only the advisement regarding exclusion from admission to the United States. He contends it was inadequate because it did not "substantially" inform him that his plea could result in "exclusion from admission to the United States." We disagree.

The immigration advisement pursuant to section 1016.5 need not be in the statutory language; substantial compliance is all that is required, "as long as the defendant is specifically advised of all three separate immigration consequences of his plea." (*People v. Gutierrez* (2003) 106 Cal.App.4th 169, 174 (*Gutierrez*).) Deportation and exclusion are terms of art in immigration law. "'Deportation is the removal or sending

back of an alien to the country from which he or she has come ....' [Citation.]
'Exclusion' is 'being barred from entry to the United States.' [Citation.]"
(*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 207-208 (*Zamudio*).)

In *Gutierrez*, *supra*, 106 Cal.App.4th 169, 171, the prosecutor advised the
defendant: "If you are not a United States citizen, you will be deported from the United
States, denied re-entry and denied amnesty or naturalization."

In rejecting the appellant's contention that the immigration advisement was
deficient because the prosecutor used the phrase, "denied re-entry," the *Gutierrez* court
stated,

> "'"Exclusion" is "being barred from entry to the United States."
> [Citation.]' [Citation.] 'Deportation is to be distinguished from exclusion,
> which is the denial of entry to the United States. [Citation.]' [Citation.]
> We hold here that only substantial compliance is required under section
> 1016.5 as long as the defendant is specifically advised of all three separate
> immigration consequences of his plea. Appellant was expressly told that
> one of the immigration consequences of his conviction was that he would
> be denied reentry into the United States; in other words, *under the statute,
> he would be excluded from the United States*. The trial court, thus,
> substantially complied with the statute, and, hence, committed no error in
> the manner in which it took appellant's plea." (*Gutierrez*, *supra*, 106
> Cal.App.4th at p. 174, fn. omitted.)

The court, here, expressly told Olivares his plea could be used against him to
"cause deportation or exclusion." Thus, unlike the advisement in *Gutierrez*, the
advisement, here, like the statute, used the word "exclusion." Further, it is implicit from
the definition of "exclusion" noted above and the context of its use, that when the court
admonished Olivares his plea could be used to "cause" his "exclusion," it meant
exclusion from admission to the United States. Additionally, during the 1991 change of
plea proceedings Olivares did not exhibit any signs of confusion and he acknowledged
that he understood the immigration advisement. Thus, we conclude that the court's 1991
immigration advisement to Olivares substantially complied with the statute and that

Olivares understood that "exclusion" meant exclusion from "admission to the United States."

Moreover, Olivares has not shown that he was prejudiced by the court's immigration advisement. "'[W]hen the only error is a failure to advise of the consequences of the plea ... the sentencing court must determine whether the error prejudiced the defendant, i.e., whether it is "reasonably probable" the defendant would not have pleaded guilty if properly advised.' [Citations.]" (*Zamudio*, *supra*, 23 Cal.4th 183, 210.) "[T]he defendant bears the burden of establishing prejudice. [Citation.] To that end, the defendant must provide a declaration or testimony stating that he or she would not have entered into the plea bargain if properly advised. It is up to the trial court to determine whether the defendant's assertion is credible, and the court may reject an assertion that is not supported by an explanation or other corroborating circumstances." (*People v. Martinez* (2013) 57 Cal.4th 555, 565.) Additionally, a defendant's "assertion he would not have pled guilty if given competent advice 'must be corroborated independently by objective evidence.' [Citations.]" (*In re Resendiz* (2001) 25 Cal.4th 230, 239.)

The record does not disclose any objective evidence that corroborates Olivares's assertion he would not have entered into his plea if it had been explained to him that it rendered him inadmissible to the United States. To the contrary, it is clear from Olivares's declaration that he understood that his 1991 plea could result in his deportation. Olivares's willingness to accept the severe immigration sanction of deportation as a consequence of his plea indicates that the immigration consequences were a marginal consideration in his decision to enter into his plea in 1991. Therefore, since Olivares has also failed to show how he was prejudiced by the alleged misadvisement of the immigration consequences of his plea, we conclude that the court did not abuse its discretion when it denied Olivares's motion to vacate.

*The Ineffective Assistance of Counsel Claim*

Olivares contends he was denied the effective assistance of counsel by Attorney Irigoyen's failure to seek to vacate the 1991 judgment based on the trial court's failure to advise him of his *Boykin/Tahl* rights and the immigration consequences of his plea "*prior to the entry of [his] plea.*" (Italics added.) He also contends Attorney Irigoyen provided ineffective representation by not filing Olivares's motion to vacate judgment until December 10, 2013, even though Olivares executed the declaration in support of the motion on August 5, 2013. We reject these contentions.

"To prevail on [an ineffective assistance of counsel] claim, [defendant] must establish his counsel's representation fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. [Citations.]" (*People v. Mesa* (2006) 144 Cal.App.4th 1000, 1007.)

As discussed previously, section 1016.5 does not authorize the court to vacate a judgment on *Boykin/Tahl* grounds. Thus, it would have been futile for Attorney Irigoyen to move to vacate the 1991 judgment pursuant to section 1016.5 on *Boykin/Tahl* grounds and Olivares did not suffer any prejudice by the failure to do so. Further, as also noted earlier, the advisement of immigration consequences must occur prior to the court's acceptance of a defendant's plea. (*People v. Mosby*, *supra*, 33 Cal.4th at p. 359; § 1016.5, subd. (a).) Since that occurred here, it would also have been futile for Attorney Irigoyen to move to vacate the judgment based on an alleged late advisement of these consequences and Olivares was not prejudiced by the failure to do so.

Moreover, since the delay in filing the motion to vacate judgment was not a factor in our decision in this matter, Olivares has also not shown that his counsel provided ineffective representation by his delay in filing the motion or that the delay prejudiced him. Accordingly, since Olivares has failed to show that Attorney Irigoyen provided

9.

ineffective representation or to show that he was prejudiced, we reject his ineffective assistance of counsel claim.

## **DISPOSITION**

The judgment is affirmed.